**PRUDENTIAL SECURITIES, INCORPORATED, Plaintiff,**

v.

**John B. DALTON, Defendant.**

**No. 95–CV–1110–B.**

United States District Court, N.D. Oklahoma.

April 18, 1996.

William B. Federman, Day Edwards Federman Propester & Christensen, Oklahoma City, OK, Samuel A. Keesal, Jr., Robert D. Feighner, Paul J. Schumacher, Keesal Young & Logan, Long Beach, CA, for Plaintiff.

Brian S. Gaskill, C. Raymond Patton, Sneed Lang Adams Hamilton & Barnett, Tulsa, OK, for Defendant.

## ORDER

BRETT, Chief Judge.

The Court has for consideration Cross–Motions for Summary Judgment pursuant to Fed.R.Civ.P. 56 of Plaintiff Prudential Securities, Incorporated ("Prudential") (docket #16), seeking confirmation of an Arbitration award, and Defendant/Counter-claimant John B. Dalton ("Dalton") (docket #14), seeking vacation of the same Arbitration award.

After an extensive review of the record and being fully advised, the Court concludes the Arbitration award should be and hereby is VACATED, based on the following analysis.[1]

### STIPULATED FACTS [2]

1. Dalton was employed with Prudential from January of 1983 through July of 1989. From April 1983 through March 1988, Dalton served as office manager of the Tulsa branch of Prudential. Dalton was then demoted and remained with Prudential as a registered representative until he voluntarily resigned in July 1989.

2. As a prerequisite to employment in the securities industry, Dalton executed a Uniform Application for Securities Industry Registration ("U–4") on or about January 18, 1983.

3. Paragraph 5 of the U–4 contains an arbitration provision which is not disputed. In addition, both parties are governed by Section 3708(a) of the NASD *Code of Arbitration Procedure* ("Arbitration Code") which contains an additional arbitration clause.

4. On or about July 18, 1989, Dalton voluntarily left Prudential. At that time, as required by Article IV, Section 3(b) of the

---

1. In vacating the Arbitrator's dismissal of the complaint of John B. Dalton, the Court in no way suggests how the matter ultimately should be decided on the merits.

2. Joint Stipulation of Parties filed January 29, 1996.

NASD By–Laws, Prudential issued a Uniform Termination Notice for Securities Industry Registration ("Form U–5" or "U–5") reflecting the reason for his departure.

5. On January 15, 1991, John Lytle ("Lytle"), a former client of Prudential, filed a Statement of Claim before the NASD against Prudential, Dalton, two subsequent branch managers of Prudential's Tulsa office, and a Prudential account executive. The claim alleged that (1) the account executive sold Lytle unsuitable investments, (2) Prudential, Dalton, and the two subsequent Prudential branch managers had failed to supervise the account executive, and (3) Prudential breached its fiduciary duty to Lytle and engaged in an ongoing fraud.

6. The NASD arbitration filed by Lytle alleged among other things damages as a result of purchasing various limited partnerships through Prudential. Prudential has entered into class action settlements, as well as a settlement agreement with the SEC, with respect to the partnerships purchased by Lytle. In June 1992, Prudential was aware of investigations being conducted by the NASD and SEC with respect to the limited partnerships purchased by Lytle.[3]

7. The Lytle claim was settled by Prudential for the sum of $137,000. Neither Dalton, nor the two subsequent Prudential branch managers, contributed to the settlement. As a result of that settlement, Prudential filed an Amended U–5 reflecting the Lytle settlement.[4] No amendments were filed as to one of the subsequent branch managers.

8. Prior to filing the Amended U–5, Prudential wrote to Dalton's counsel, C. Raymond Patton ("Patton"), on April 24, 1992, enclosing a copy of the Disclosure Reporting Page from the proposed U–5 amendment. The page provided to Patton stated "Claimant alleged unsuitability in connection with investments in limited partnerships." It did not contain the additional language "alleged damages in excess of $10,000." Boxes 13B(1) and 13B(2), which relate to questions in item

13, were not marked. Prudential received no response from either Patton or Dalton.

9. On the Amended U–5 in response to Question 7 concerning Lytle's allegations, Prudential quoted from the allegation in the Lytle Statement of Claim and responded that "Claimant alleged unsuitability in connection with investments in limited partnerships. Alleged damages in excess of $10,000." In addition, Prudential checked boxes 13B(1) and 13B(2) of the form indicating that Dalton had been the subject of an investment-related consumer initiated complaint that (1) alleged compensatory damages of $10,000 or more, fraud, or the wrongful taking of property and (2) was settled or decided against the individual for $5,000 or more, or found fraud or the wrongful taking of property.

10. On June 17, 1992, Patton, on behalf of Dalton, wrote to the NASD alleging that the Amended U–5 was misleading, and requesting that it be expunged from Dalton's record. Patton acknowledged that Dalton had a right to provide a summary of the transaction on the Disclosure Reporting Page, which Dalton did by filing an amended U–4 on July 23, 1992. On July 9, 1992, Keith E. Hinrichs, Assistant Director of the NASD, responded to Patton's letter by confirming that Prudential was required to amend Dalton's U–5 to include information concerning the Lytle settlement.

### PROCEDURAL HISTORY

11. On May 25, 1994, Dalton initiated arbitration proceedings before the NASD by filing an Uniform Submission Agreement.

12. On May 27, 1994, Dalton filed his Statement of Claim.

13. On September 20, 1994, Prudential filed its Joint Response to the Statement of Claim and a motion to dismiss. Prudential also executed the Uniform Submission Agreement.

14. The Uniform Submission Agreement, which was signed by all parties, obligates the parties to conduct the arbitration in accor-

---

**3.** While Prudential does not dispute the underlying facts as set forth in paragraph 6, it contends such facts are irrelevant to this proceeding.

**4.** Prudential contends that its filing of the amended U–5 was required by law. Dalton disputes this contention.

dance with the Arbitration Code. The Uniform Submission Agreement provides in part:

1. The undersigned parties hereby submit the present matter in controversy, as set forth in the attached statement of claim, answers, cross-claims and all related counter-claims and/or third party claims which may be asserted, to arbitration in accordance with the Constitution, By–Laws, Rules, Regulations and/or Code of Arbitration Procedure of the sponsoring organization.

\* \* \* \* \* \*

3. The undersigned parties agree in the event a hearing is necessary, such hearing shall be held at a time and place as may be designated by the Director of Arbitration or the arbitrator(s). The undersigned parties further agree and understand that the arbitration will be in accordance with the Constitution, By–Laws, Rules, Regulations and/or NASD Code of Arbitration procedure of the sponsoring organization.

\* \* \* \* \* \*

4. The undersigned parties further agree to abide by and perform any award(s) rendered pursuant to this Submission Agreement and further agree that a judgment and any interest due thereon may be entered upon such award(s) and, for these purposes, the undersigned parties hereby voluntarily consent to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment.

15. The applicability of the Arbitration Code was not modified by the parties either in their agreement to arbitrate or in the Uniform Submission Agreements.

16. In addition to paragraph 4 of the Submission Agreement, Section 3741 of the NASD's Arbitration Code provides that:

(a) All awards shall be in writing and signed by a majority of the arbitrators or in such manner as is required by applicable law. Such awards may be entered as a judgment in any court of competent jurisdiction.

(b) Unless the applicable law directs otherwise, all awards rendered pursuant to this Code shall be deemed final and not subject to review or appeal.

17. On October 5, 1994, Dalton filed his response to Prudential's motion to dismiss. In his response Dalton noted the Arbitration Code does not refer to a motion proceeding which challenges the validity of a complaint. However, the Arbitration Code does not contain language precluding such a proceeding.

18. On December 21, 1994, Prudential filed its reply in support of its motion to dismiss.

19. On July 17, 1995, Prudential filed a supplemental brief. On August 10, 1995, Dalton filed his reply to Prudential's supplemental brief and Prudential filed a final supplement attaching a recent judicial opinion.

20. Prudential requested that the NASD schedule a pre-hearing conference for the purpose of hearing Prudential's motion to dismiss. On June 9, 1995, the NASD notified the parties that the pre-hearing conference was scheduled for August 18, 1995, at which time Prudential's motion to dismiss was to be heard.

21. On August 18, 1995, in Tulsa, Oklahoma, the parties attended a pre-hearing conference at which time the panel heard substantial argument on Prudential's motion to dismiss. At that time, the parties accepted the panel's composition. The panel did not admit evidence other than that which was attached to the Statement of Claim, Prudential's Response or other submissions made by the parties in regard to the motion to dismiss.

22. On August 24, 1995, the NASD arbitration administrator notified the parties that Prudential's motion had been granted, thereby dismissing Dalton's claim with prejudice.

23. On October 12, 1995, the arbitration administrator wrote the parties enclosing a copy of the NASD final order setting forth the panel's ruling granting Prudential's motion to dismiss Dalton's claim.

24. Prudential's complaint was timely filed in accordance with Section 9 of the Federal Arbitration Act, 9 U.S.C. § 9, which

provides that a petition to confirm must be brought within one year after the award is made.

### The Standard of Fed.R.Civ.P. 56 Motion for Summary Judgment

Summary judgment pursuant to Fed. R.Civ.P. 56 is appropriate where "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Windon Third Oil & Gas v. FDIC*, 805 F.2d 342 (10th Cir.1986). In *Celotex*, 477 U.S. at 317, 106 S.Ct. at 2548, 91 L.Ed.2d at 265 (1986), it is stated:

> "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

To survive a motion for summary judgment, nonmovant "must establish that there is a genuine issue of material facts ..." Nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita v. Zenith*, 475 U.S. 574, 585, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The evidence and inferences therefrom must be viewed in a light most favorable to the nonmoving party. *Conaway v. Smith*, 853 F.2d 789, 792 n. 4 (10th Cir.1988). Unless the Defendants can demonstrate their entitlement beyond a reasonable doubt, summary judgment must be denied. *Norton v. Liddel*, 620 F.2d 1375, 1381 (10th Cir.1980). The standard in reference to summary judgment is equally applicable to the granting of a partial summary judgment dictated in reference to a particular issue in the case.

### Legal Analysis

"There is a presumption in the Federal Arbitration Act that arbitration awards will be confirmed." *Bowles Financial v. Stifel,* *Nicolaus,* 1993 WL 663326, *2 (W.D.Okla.), *aff'd* 22 F.3d 1010 (10th Cir.1994) (*citing Robbins v. Day,* 954 F.2d 679, 682 (11th Cir.), *cert. denied sub nom.* 506 U.S. 870, 113 S.Ct. 201, 121 L.Ed.2d 143 (1992); *Booth v. Hume Publishing, Inc.,* 902 F.2d 925, 932 (11th Cir.1990) (Section 9 of the arbitration act requires confirmation unless the court vacates, modifies, or corrects the award pursuant to 9 U.S.C. § 10 & 11)). The limits of judicial review of an arbitration award are very narrow. *Foster v. Turley,* 808 F.2d 38, 42 (10th Cir.1986). Courts must strive to uphold the arbitrator's award, "lest the efficiency of the arbitration process be lost." *Robbins,* 954 F.2d at 682 (*citing Anderman/Smith Operating Co. v. Tennessee Gas Pipeline Co.,* 918 F.2d 1215, 1217 (5th Cir.), *cert. denied,* 501 U.S. 1206, 111 S.Ct. 2799, 115 L.Ed.2d 972 (1990)).

Despite such necessary constraints, avenues exist which allow Courts to set aside arbitration awards for cause. The Federal Arbitration Act enumerates the limited instances in which federal Courts may vacate an arbitration award:

> In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration ...
>
> (c) Where the arbitrators were guilty of misconduct in refusing ... to hear evidence pertinent and material to the controversy ...
>
> (d) Where the arbitrators exceed their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made.

9 U.S.C.A. § 10 (1996).

■ "[F]ederal courts have never limited their scope of review [of an arbitration award] to a strict reading of [9 U.S.C.A. § 10]." *Bowles Financial v. Stifel, Nicolaus,* 22 F.3d 1010, 1012 (10th Cir.1994) (*citing Jenkins v. Prudential–Bache Sec.,* 847 F.2d 631, 633 (10th Cir.1988)). An arbitrator is guided by a basic requirement to grant the parties a fundamentally fair hearing. This requirement has been expressed "in various forms." *Bowles,* 22 F.3d at 1013 (*citing*

*Burchell v. Marsh,* 58 U.S. (17 How.) 344, 349, 15 L.Ed. 96 (1854) ("[i]f the award is within the submission, and contains the honest decision of the arbitrators, after a full and fair hearing of the parties, a court of equity will not set it aside for error, either in law or fact"). *Forsythe Int'l, S.A. v. Gibbs Oil Co.,* 915 F.2d 1017, 1020 (5th Cir.1990) ("In reviewing the district court's vacatur, we posit the ... question ... whether the arbitration proceedings were fundamentally unfair"); *Hoteles Condado Beach v. Union De Tronquistas Local 901,* 763 F.2d 34, 40 (1st Cir. 1985) ("Vacatur is appropriate only when the exclusion of relevant evidence 'so affects the rights of a party that it may be said that he was deprived of a fair hearing'" (citation omitted)); *Bell Aerospace Co. Div. of Textron v. Local 516, Int'l Union,* 500 F.2d 921, 923 (2d Cir.1974) ("an arbitrator need not [observe] all the niceties [of] federal courts ... [O]nly grant ... a fundamentally fair hearing")).

A fundamentally fair hearing requires the procedural steps of notice, an opportunity to be heard, the opportunity to present evidence which is relevant and material, and arbitrators who are not infected with bias. *Bowles,* 22 F.3d at 1013.

█ Dalton's contention is that untrue stigmatizing information was placed in the Amended U–5 by Prudential and filed with the NASD. Specifically, that which Dalton contends is stigmatizing in the Amended U–5 states the Lytle claim "was settled or decided against the individual (Dalton) for $5,000.00 or more, or found fraud, or the wrongful taking of property."

Dalton contends that while it is true $137,-000.00 was paid by Prudential in settlement of the Lytle claim, he paid nothing, and any fraud involved was that of Prudential, not him. He further asserts that the untrue statement in the public document directly implicates him in precipitating the settlement, or that he was in some way guilty of fraud, and blackballs him in the securities industry from achieving a managerial position in the future. Dalton contends his former employer, Prudential, intentionally falsified the Amended U–5 to deflect attention from Prudential, who at that time was being investigated nationwide for fraud in urging their local managers and account executives to sell the subject limited partnerships sponsored by Prudential.

Dalton's principal claim alleges a breach of fiduciary duty by his former employer and tortious interference with future economic advantage under Oklahoma law. Dalton also asserts a claim in another matter to be reimbursed an attorney's fee which he alleges Prudential agreed to pay.

In response to Dalton's arbitration claim, Prudential filed a motion to dismiss for failure to state a claim and urged various defenses, i.e., the filing of the Amended U–5 is absolutely privileged, *res judicata,* estoppel, and statute of limitations.

In the arbitrator's order dismissing Dalton's complaint it is stated:

"After considering the pleadings, the oral arguments on the Motion to Dismiss and the evidence or materials presented at the pre-hearing, the undersigned arbitrators have decided in full and final resolution of the issues submitted for determination as follows:

1. Prudential Securities Incorporated's Motion to Dismiss is hereby granted in its entirety; therefore, all claims asserted in the Statement of Claim are hereby dismissed in their entirety;

2. All requests for relief not specifically granted herein are hereby denied in their entirety; and

3. The parties shall bear their own costs of arbitration including attorneys' fees except for those costs specifically enumerated herein."

Dalton asks the Court to vacate the arbitration award pursuant to Section 10 of the FAA, 9 U.S.C. § 10, on the following grounds: the panel was guilty of misconduct in refusing to allow a complete presentation of evidence pertinent and material to the controversy; the arbitrators exceeded their powers provided by the Arbitration Code procedure in considering and granting the motion to dismiss for failure to state a claim; the arbitrators' award manifests a complete and total disregard of the law; and that the

arbitrators' award is contrary to public policy. Prudential, in its motion for summary judgment, asserts a majority of the arbitration panel of three had authority under the circumstances to grant Prudential's motion to dismiss following the hearing thereon.

The NASD Uniform Submission Agreement signed by all the parties obligates them to conduct the arbitration in accordance with the Arbitration Code. The Arbitration Code, which sets forth the ground rules of arbitration, contains no provision for the filing of a motion to dismiss for failure to state a claim. It is also noted the Code does not prohibit such a motion. Because arbitration proceedings are recognized as informal, and not bound by the strict rules of the law and equity courts, in the appropriate case after hearing an argument, arbitrators would undoubtedly have authority to dismiss a claim which, on its face, does not state a claim entitling the claimant to relief, whether frivolous or not.

Herein, the arbitration panel's notice to claimant Dalton of the pre-hearing conference was scheduled for the purpose of hearing Prudential's motion to dismiss. At the pre-hearing conference, the panel did not hear any testimony from witnesses but considered the oral presentation of counsel for the parties and considered documentation in the file consisting of the statement of the claim, Prudential's motion to dismiss, and the parties' briefs with attachments to same. Thus, claimant Dalton was not provided the opportunity to have his previous motion to compel production of documents heard, nor was he given the opportunity to present factual evidence at a hearing relative to the factual issues presented by his claim. The award of the arbitrators sustaining Prudential's motion to dismiss without a hearing on the merits was by a 2 to 1 vote.

Federal courts presented with a claim to vacate an arbitration award under § 10 of the FAA generally looked to a determination of whether the arbitration process provided fundamental fairness, in essence, fundamental due process. The Tenth Circuit Court of Appeals stated in *Bowles Financial Group v. Stifel, Nicolaus & Co.,* 22 F.3rd 1010 (10th Cir.1994):

"Federal courts have never limited their scope of review [of an arbitration award] to a strict reading of [9 U.S.C.A. § 10]," *Jenkins,* 847 F.2d at 633. Courts have created a basic requirement that an arbitrator must grant the parties a fundamentally fair hearing, expressing their requirement in various forms. *Burchell v. Marsh,* 58 U.S. (17 How.) 344, 349, 15 L.Ed. 96 (1854):

If the award is *within the submission,* and contains the honest decision of the arbitrators, after a *full and fair hearing* of the parties, a court of equity will not set it aside for error, either in law or in fact").

\*    \*    \*    \*    \*    \*

The courts seem to agree that a fundamentally fair hearing requires only notice, opportunity to be heard and *to present relevant and material evidence* and argument before the decision makers, and that the decision makers are not infected with bias. See *Robbins v. Day,* 954 F.2d 679, 685 (11th Cir.).

\*    \*    \*    \*    \*    \*

*Sunshine Mining Co. v. United Steelworkers of Am.,* 823 F.2d 1289, 1295 (9th Cir. 1987) ("Hearing is fundamentally fair if it meets the minimum requirements of fairness '—adequate notice, a *hearing on the evidence* ... impartial decision'") (quoting *Ficek v. Southern Pacific Co.,* 338 F.2d 655, 657 (9th Cir.1964), *cert. denied,* 380 U.S. 988, 85 S.Ct. 1362, 14 L.Ed.2d 280 (1965)). (emphasis added.)

This Court is of the view the arbitration panel was guilty of misconduct in refusing to hear evidence pertinent and material to the controversy and exceeded their powers in granting the motion to dismiss without hearing such evidence. The claimant was thereby denied fundamental fairness.

Before an arbitration panel should be able to dismiss a claim for failure to state a claim upon which relief can be granted, the claim should be facially deficient. Such is not the case here for if the allegations of the claimant's complaint are taken to be true, he would be entitled to some form of relief, even if it were limited to requiring Prudential to

file a second Amended U–5 to set out the true nonstigmatizing facts. Thus, to assure fundamental fairness, claimant is entitled to offer evidence relevant to his claim.

Prudential, in support of the motion to dismiss, asserted that it was required to amend Dalton's form U–5, more than four years after his termination as branch manager, to update the Lytle claim when it was settled. The court believes this is correct as the NASD rules require updating the claim disposition. Prudential also states that the matters asserted in the amended form U–5 filed in June 1992 were true and accurate. Prudential further asserts that Dalton and his counsel were furnished with a copy of the appropriate page of the Amended U–5 for review and comment. The stipulated facts indicate to the contrary because Dalton and his counsel were not furnished with any part of the U–5 that stated the claim had been settled for $137,000.00 against Dalton, or as the result of Dalton's fraudulent acts or wrongful taking of property. Further, if Dalton's allegations are correct, it was not his fraudulent acts that precipitated the settlement but those of his employer, Prudential, in sponsoring and urging the sale of the subject limited partnerships. For this reason, Prudential's claim of estoppel lacks validity, if Dalton's factual claims can be established. Additionally, Prudential urges that responses by a brokerage firm in a form U–5 are absolutely privileged. Prudential also cites legal authority in support. Dalton cites the case of *Baravati v. Josephthal, Lyon and Ross, Incorporated,* 28 F.3rd 704 (7th Cir. 1994). In *Baravati,* the court held that the U–5 termination notice required by the NASD is not absolutely privileged as a communication made in a judicial or quasi-judicial proceedings so as to insulate members from liability for contents of the form. The Court concludes that *Baravati* is the better view and also conforms to Oklahoma law. *Kirschstein v. Haynes,* 788 P.2d 941, at 947 (Okla.1990).

Prudential's *res judicata* defense does not appear to be supported by the record. The prior arbitration proceeding to which Prudential alludes involved different issues and different factual matters, unrelated to the Amended U–5 filing in the instant matter. Prudential also urges that the one year statute of limitations under Oklahoma in a defamation case has expired. However, the arbitration complaint herein by Dalton does not sound in defamation, but in alleged breach of fiduciary duty and tortious interference with economic advantage, each of which have two year statutes of limitation under the law of Oklahoma.

The issue before the Court at this time is not who is ultimately going to prevail. The issue is whether or not claimant Dalton was granted a fair hearing under the Arbitration Code to offer evidence in support of his factual claims. As previously stated, the Court concludes by sustaining the motion to dismiss of Prudential the arbitration panel improperly denied claimant the right to a fundamentally fair hearing. Therefore, the Court hereby vacates the underlying arbitration award for the reasons stated above and directs the parties and the matter be remanded to a duly constituted NASD arbitration panel to proceed with an evidentiary hearing and ruling on the merits, within six months from this date.

IT IS SO ORDERED.