[808 NYS2d 604]

Kethe Cicconi, Appellant, v McGinn, Smith & Co., Inc., et al., Respondents.

First Department, December 22, 2005

### APPEARANCES OF COUNSEL

*Wechsler & Cohen, LLP,* New York City (*David B. Wechsler* and *Marc O. Sheridan* of counsel), for appellant.

*Gersten Savage LLP*, New York City (*Marc R. Rosen* of counsel), for respondents.

### OPINION OF THE COURT

SAXE, J.

On this appeal, plaintiff asks this Court to overrule, or significantly limit, our prior decision in *Herzfeld & Stern v Beck* (175 AD2d 689 [1991], *lv dismissed* 79 NY2d 914 [1992], 82 NY2d 789 [1993], 89 NY2d 1064 [1997]), in which we held that statements made by a brokerage firm regarding a terminated employee in a Form U-5 were absolutely privileged. He suggests that instead we join those courts that have held such information to be protected only by a qualified immunity, which may be vitiated upon a showing that the information was included "with actual malice" (*see e.g. Acciardo v Millennium Sec. Corp.*, 83 F Supp 2d 413, 420 [SD NY 2000]).

Plaintiff Kethe Cicconi was the founder of broker-dealer Mercer Partners, which in turn created and developed IPOSyndicate.com, an online financial network that allowed individual investors to participate in initial public offerings (IPOs). On July 19, 2001, defendant McGinn, Smith & Co., Inc. (McGinn), a privately held, full-service investment banking and brokerage firm, entered into a series of interrelated agreements with Cicconi and Mercer Partners, including two asset purchase agreements with Mercer Partners and Cicconi and an employment agreement with Cicconi. The assets subject to these purchase agreements included 12 former Mercer Partners' retail stockbrokers and all of their clients and/or accounts, as well as 50% of the IPOSyndicate.com business. Pursuant to the employment agreement, Cicconi would work as McGinn's director of retail sales for five years, subject to termination provisions specifying that McGinn could terminate Cicconi's employment for "cause," narrowly defined as Cicconi's failure to comply with any material terms of the employment agreement, engagement in gross misconduct, conviction of any felony or disregard of directions from McGinn.

On December 11, 2002, McGinn terminated Cicconi's employment effective immediately. As is required by Rules of the New

York Stock Exchange rule 345, on December 30, 2002, McGinn filed with the National Association of Securities Dealers (NASD) a Form U-5 uniform termination notice for securities industry registration, which stated that the "Reason for [Cicconi's] Termination" was "PERFORMANCE BASED."

Cicconi sued for money damages and declaratory relief on grounds of defamation, breach of contract and other related claims, asserting that the "Reason for Termination" given on the Form U-5 was false and was intentionally used both to harm Cicconi's reputation in the securities industry and to bootstrap McGinn's false claim that it had cause to terminate Cicconi's employment. On defendants' motion, the defamation claim was dismissed on the ground that pursuant to *Herzfeld & Stern*, the statement on the Form U-5 was subject to an absolute privilege.

On appeal, plaintiff takes issue with the adoption of an absolute privilege in this context, arguing that the public policy behind providing such complete immunity from liability for defamation is inapplicable to a mere filing of a Form U-5.

The matter of absolute versus qualified immunity has been debated within the securities industry and the courts (*see* Charkes, Outside Counsel, *Qualified Privilege For the Form U-5*, NYLJ, Mar. 19, 1998, at 1; Siconolfi, *"Blackballing" of Brokers is Growing on Wall Street*, Wall Street Journal, Feb. 27, 1998, at C1; Wright, *Form U-5 Defamation*, 52 Wash & Lee L Rev 1299 [1995]). Indeed, many courts around the country have granted Form U-5 statements qualified, rather than absolute, immunity, permitting the privilege to be negated if the employee can demonstrate that the former employer made the statement with malice (*see e.g. Acciardo v Millennium Sec. Corp.*, 83 F Supp 2d 413 [2000], *supra*; *see also Dawson v New York Life Ins. Co.*, 135 F3d 1158 [7th Cir 1998]; *Glennon v Dean Witter Reynolds, Inc.*, 83 F3d 132 [6th Cir 1996]; *Andrews v Prudential Sec., Inc.*, 1997 US Dist LEXIS 23694 [ED Mich 1997], *affd* 160 F3d 304 [6th Cir 1998]; *Prudential Sec., Inc. v Dalton*, 929 F Supp 1411 [ND Okla 1996]; *Haburjak v Prudential Bache Sec., Inc.*, 759 F Supp 293 [WD NC 1991]; *Eaton Vance Distribs., Inc. v Ulrich*, 692 So 2d 915 [Fla Dist Ct App 1997], *review denied* 705 So 2d 8 [Fla 1997]).

However, New York State courts have consistently held that statements made in a Form U-5 are absolutely privileged (*see Herzfeld & Stern*, 175 AD2d 689 [1991], *supra*; *Hessel v Goldman, Sachs & Co.*, 281 AD2d 247, 248 [2001], *lv denied* 97 NY2d 625 [2001]; *see also Matter of Dunn v Ladenburg Thalmann &*

Co., 259 AD2d 544 [2d Dept 1999], *lv denied* 93 NY2d 810 [1999]; *Rosenberg v MetLife, Inc.*, 2005 WL 356821, 2005 US Dist LEXIS 2135 [SD NY 2005]).

When this Court, in *Herzfeld & Stern*, first considered the import of statements made in a Form U-5, our analysis was based upon the rule that statements made in the course of a judicial or quasi-judicial proceeding are absolutely privileged so long as they are material and pertinent to the questions involved, notwithstanding the motive for making them. In the administrative context, the absolute privilege attaches not only to the hearing stage, but to every step of the proceeding even if it is preliminary and/or investigatory, and irrespective of whether formal charges are ever presented (*see Herzfeld & Stern*, 175 AD2d at 691, citing *Toker v Pollak*, 44 NY2d 211 [1978]). We reasoned that the New York Stock Exchange, and more particularly, its Department of Enforcement, provides a comprehensive system of oversight and self-regulation to ensure adherence by members of the industry to both the statutory mandates and ethical standards of the profession, and is authorized to inquire into whether one of its members or an employee thereof should be disciplined for violating a statute, rule or regulation, a process that is adversarial in nature and affords the subject of the investigation due process protections (*see* 15 USC § 78f), including the right to appeal (15 USC § 78s [d]). Accordingly, the process of inquiry following a termination qualifies as a quasi-judicial administrative proceeding, making the U-5 notice form material and pertinent to the inquiry into whether the plaintiff had contravened any federal statute or securities rule or regulation (*Herzfeld & Stern* at 691-692).

Plaintiff contends that *Herzfeld & Stern* was unnecessarily overbroad since not every Form U-5 is investigated, and therefore the filing of one does not always result in a quasi-judicial proceeding. He also asserts that even if an investigation is launched, there is no opportunity for the employee to contest the defamatory statement before it is published in the industry, and there is no adversarial proceeding once it is disseminated. Although an employee can respond to the statements, the only option to eradicate any defamatory statements is for the employee to obtain a court-ordered expungement.

Although there is some logic to plaintiff's arguments, on balance, we conclude that the ruling made by this Court in *Herzfeld & Stern* was correct. The mandatory filing of a completed uniform termination notice, the Form U-5, within 30 days of

termination of a registered employee, is required in connection with a broad and complex regulatory scheme which is overseen by the Securities and Exchange Commission (SEC). The treatment given to a particular Form U-5's statement, that is, the nature of the privilege accorded it, cannot depend upon whether or not the agency proceeds with an investigation or the "quasi-judicial" process.

Nor do the policy concerns in favor of qualified privilege warrant a different result.

> "Absolute privilege is conferred where society's interest in the free flow of a particular type of information is so strong that communicators are granted complete immunity from defamation liability. . . . Qualified privileges, by contrast, are conferred when society's interest in encouraging the flow of certain types of information is strong, but not sufficiently compelling to warrant protecting persons who defame out of highly improper motives or in a particularly egregious way" (Wright, *Form U-5 Defamation*, 52 Wash & Lee L Rev at 1325-1326).

While the prevalence of unethical behavior in the securities industry militates in favor of protecting brokerage firms from defamation claims based upon statements in a Form U-5 in order to encourage member organizations to fully report why they terminated an employee, in the final analysis the most important protection the privilege provides is not of the brokerage firms, but of investors. By assuring brokerage firms that they will not be liable in tort for statements in their mandatory U-5 filings, we avoid the possibility that they will hesitate to clearly state the exact grounds for an employee's termination. Only by clear descriptions of questionable conduct by brokers can we best ensure that any future employers and customers have notice of any such conduct in their interactions with those brokers.

The possibility remains that brokerage firms may use the Form U-5 in bad faith to terminate brokers without proper cause (*see* Siconolfi, *"Blackballing" of Brokers is Growing on Wall Street, supra* ["Wall Street firms seem to have found a new weapon in battling brokers and branch managers who ruffle feathers: termination notices"]); however, we find it significant that there are remedies available to an employee who disputes the employer's statements.

We therefore adhere to our position in *Herzfeld & Stern* that statements made in a uniform termination notice for securities industry registration (Form U-5) enjoy absolute immunity.

Accordingly, the order of the Supreme Court, New York County (Karla Moskowitz, J.), entered on or about June 10, 2004, which, to the extent appealed from as limited by plaintiff's brief, granted defendants' motion pursuant to CPLR 3211 (a) (7) to dismiss plaintiff's cause of action for defamation, should be affirmed, without costs.

ELLERIN, J. (dissenting). I dissent and would reverse.

Continued adherence to *Herzfeld & Stern v Beck* (175 AD2d 689 [1991], *lv dismissed* 79 NY2d 914 [1992], 82 NY2d 789 [1993], 89 NY2d 1064 [1997]) and absolute privilege frustrates rather than furthers the salutary purpose for which 15 USC § 78f was enacted. Thus, while I joined in the opinion in *Herzfeld & Stern*, I now believe that that case was wrongly decided. As noted in the writings cited by the majority itself in the instant case, the cloak of absolute privilege has generated substantial abuses by way of distorted and false filings for tactical, competitive business reasons, without any realistic recourse available to those injured. If the purpose of section 78f is to protect investors and the public, it is difficult to see how that purpose is furthered by inaccurate or false information. A qualified privilege, as is the case in many other jurisdictions, would serve the industry purpose of protecting investors and the public from problem representatives, while protecting the interests of the employee.

The United States Court of Appeals for the Second Circuit, for example, nearly contemporaneously with this Court's decision in *Herzfeld & Stern*, upheld an arbitration award of defamation based on a qualified privilege for Form U-5 statements and evidence of the employer's "flagrantly spiteful conduct, demonstrating its intent simply to injure [the employee's] reputation" (*Fahnestock & Co., Inc. v Waltman*, 935 F2d 512, 516 [1991]). More recently, the United States District Court for the Southern District of New York reviewed the conflicting federal and state precedents and observed that "[g]iven the general controversy and weight of conflicting case law, there is ample evidence to suggest that New York's highest court may some day reach a different conclusion on Form U-5 immunity" (*Acciardo v Millennium Sec. Corp.*, 83 F Supp 2d 413, 420 [2000] [upholding arbitration award based on qualified immunity standard]).

The United States Court of Appeals for the Seventh Circuit has accorded a qualified privilege to statements on a Form U-5, finding that "wiser policy leads to the conclusion that a quali-

fied privilege adequately protects the interests of all parties concerned" (*see Dawson v New York Life Ins. Co.*, 135 F3d 1158, 1164 [1998]; *see also Glennon v Dean Witter Reynolds, Inc.*, 83 F3d 132 [6th Cir 1996]). The United States District Court for the Eastern District of Michigan, Southern Division, rejected the argument that the contents of a Form U-5 are absolutely privileged, and applied Michigan rather than New York law "in light of Michigan's interest in protecting the reputations of its citizens from defamatory statements" (*Andrews v Prudential Sec., Inc.*, 1997 US Dist LEXIS 23694, *12 [ED Mich 1997], *affd* 160 F3d 304 [6th Cir 1998]; *see also Prudential Sec., Inc. v Dalton*, 929 F Supp 1411 [ND Okla 1996]; *Eaton Vance Distribs., Inc. v Ulrich*, 692 So 2d 915 [Fla Dist Ct App 1997], *review denied* 705 So 2d 8 [Fla 1997]).

> "Given the possibility of [reporting] abuses and the very serious damage that improper Form U-5 reporting can do to individuals' business reputations and employment prospects, immunizing broker-dealers from all liability for defamatory Form U-5 statements would afford insufficient protection to the reputational interest of individuals employed in the securities industry. Any response to Form U-5 defamation concerns must balance these reputational interests, securities regulators' need for accurate and complete information about the movements of problem representatives, and broker-dealers' desire for protection against civil liability for good-faith errors in Form U-5 reporting. To achieve such a balance, Form U-5 statements should enjoy only qualified protection from defamation liability" (Wright, *Form U-5 Defamation*, 52 Wash & Lee L Rev 1299, 1330-1331 [1995]).

BUCKLEY, P.J., and MARLOW, J., concur with SAXE, J.; ELLERIN and WILLIAMS, JJ., dissent in a separate opinion by ELLERIN, J.

Order, Supreme Court, New York County, entered on or about June 10, 2004, affirmed, without costs.