Chaskie J. ROSENBERG,
Plaintiff–Appellant,

v.

METLIFE, INC., Metropolitan Life Insurance Company, and Metlife Securities, Inc., Defendants–Appellees.

Docket No. 05–4363–CV.

United States Court of Appeals,
Second Circuit.

Argued: April 21, 2006.

Decided: June 28, 2006.

---

7. We suspect that this is the point the District Court sought to make when it described what occurred as unforeseeable.

Maurice W. Heller (Jacob W. Heller and Allen M. Eisenberg, on the brief), Heller Horowitz & Feit, P.C., New York, NY, for Plaintiff–Appellant.

Steven E. Obus (Steven Yarusinsky, on the brief), Proskauer Rose LLP, Newark, NJ, for Defendants–Appellees.

Before WALKER, Chief Judge,
JACOBS and WALLACE, Circuit
Judges.*

JOHN M. WALKER, JR., Chief Judge.

The National Association of Securities Dealers ("NASD") requires that, whenever a registered employee is terminated, a member firm must fill out and submit to the association a termination form ("Form U–5"), which the NASD retains and makes available to any member firm upon request. The form asks the reason for the termination; it is typically requested by member firms whenever a broker applies for a new job. Although the forms were designed to provide both member firms and the public with information about brokers' conduct, they also can be used to smear and defame former employees. *See, e.g.,* Michael Siconolfi, *"Blackballing" of Brokers is Growing on Wall Street,* Wall St. J., Feb. 27, 1998, at C1.

█ It is not uncommon for a soured employer-and-employee relationship to lead to litigation—whether meritorious or frivolous. Thus, it should come as no surprise that Form U–5 statements have prompted litigation by former employees. *See, e.g.,* Ruth Simon, *Street Justice? Broker Wins $27.6 Million Award,* Wall St. J., Aug. 9, 2001, at C1; Edward Felsenthal, *Filings About Brokers' Departures Made by Firms Spark Libel Suits,* Wall St. J., Apr. 14, 1994, at B10. The traditional vehicle for such claims has been a state law action for defamation.[1] The extent to which statements made on a Form U–5 are protected from such suits, by either an absolute or qualified privilege, is likewise committed to state law.

Whereas statements accorded an absolute privilege entitle their maker to absolute immunity from a lawsuit premised on the defamatory nature of those statements, "[t]he shield provided by a qualified privilege may be dissolved if [the] plaintiff can demonstrate that [the] defendant spoke with 'malice.' " *Liberman v. Gelstein,* 80 N.Y.2d 429, 437, 590 N.Y.S.2d 857, 605 N.E.2d 344 (1992) (citation omitted). Under New York law, "malice" includes both

---

* The Honorable J. Clifford Wallace, United States Court of Appeals for the Ninth Circuit, sitting by designation.

1. Defamation in word or print is cognizable in an action for libel. *Celle v. Filipino Reporter Enters.,* 209 F.3d 163, 176 (2d Cir.2000). Under New York law, libel consists of five elements: (1) "a written defamatory statement of fact concerning the plaintiff"; (2) "publication to a third party"; (3) "fault (either negligence or actual malice depending on the status of the libeled party)"; (4) "falsity of the defamatory statement"; and (5) "special damages or per se actionability (defamatory on its face)." *Id.* (citations omitted).

common-law malice ("spite or ill will") and constitutional malice (knowledge of falsity or a reckless disregard for the truth). *Id.* at 437–38, 590 N.Y.S.2d 857, 605 N.E.2d 344 (citations omitted).

In the instant appeal, which is taken from a July 19, 2005, judgment of the United States District Court for the Southern District of New York (Jed S. Rakoff, *Judge),* the plaintiff-appellant argues that the district court erred when it held that, under New York law, statements made on a Form U–5 are protected by an absolute privilege. We conclude that this case turns on an unsettled and important question of New York law: Are statements made by an employer on a Form U–5 subject to an absolute or a qualified privilege? We certify this question to the New York Court of Appeals.

## BACKGROUND

Plaintiff-appellant Chaskie Rosenberg brought an action for employment discrimination, libel, fraudulent misrepresentation, and breach of contract against defendants-appellees MetLife, Inc., Metropolitan Life Insurance Company, and MetLife Securities, Inc. (collectively "MetLife"). Rosenberg alleged, among other things, that he was both investigated and terminated from his employment at MetLife because he is a Hasidic Jew. For his libel claim, Rosenberg alleged that statements made by MetLife on a Form U–5 filed in connection with his termination were defamatory and made with malicious intent. The Form U–5 listed the following reasons for Rosenberg's termination:

AN INTERNAL REVIEW DISCLOSED MR[.] ROSENBERG APPEARED TO HAVE VIOLATED COMPANY POLICIES AND PROCEDURES INVOLVING SPECULATIVE INSURANCE SALES AND POSSI-

BLE ACCESSORY TO MONEY LAUNDERING VIOLATIONS.

Appx. 684–85. The same statement appeared on the Form U–5 of each of five other Hasidic Jews terminated by MetLife. Appx. 1600–01. All of the terminated employees, including Rosenberg, worked out of MetLife's All–Boro (New York) Agency and were originally hired to develop business among the Hasidic community in Brooklyn, New York.

After discovery, MetLife moved for summary judgment on all counts. In an order entered February 15, 2005, the district court denied summary judgment on Rosenberg's two discrimination claims and one of his contract claims, but granted summary judgment in favor of MetLife as to Rosenberg's libel and fraudulent misrepresentation claims. With regard to Rosenberg's libel claim, the district court held that, under New York law, statements made on a Form U–5 are "absolutely privileged"; it noted that, to the extent that this circuit had ruled to the contrary in *Fahnestock & Co. v. Waltman,* 935 F.2d 512 (2d Cir.1991), "overwhelming authority in the New York courts" has supplanted *Fahnestock* and rendered it bad law.

Following disposal of the motion for summary judgment, the district court held a jury trial on Rosenberg's remaining claims. The jury returned a verdict of "not liable" as to both discrimination counts; the district court dismissed the contract claim at the close of the presentation of MetLife's case. Final judgment was entered on July 19, 2005. This appeal followed.

## DISCUSSION

On appeal, Rosenberg seeks review of only one issue: Whether, in granting summary judgment to the defendants on his libel claim, the district court erred when it held that, under New York law, statements

made on a Form U–5 are protected by an absolute privilege. We review *de novo* an order granting summary judgment. *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir.2003). "Summary judgment is appropriate only if the moving party shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Id.*

Rosenberg argues that the district court erroneously interpreted " 'the overwhelming authority in the New York courts' " as supporting the conclusion that Form U–5 statements are absolutely privileged. Pl.'s Br. 16. Rosenberg contends that "the authority in the New York courts is not settled, and this Court should uphold its previous determination in *Fahnestock & Co. v. Waltman*, 935 F.2d 512, 516 (2d Cir.1991), in which it held that statements in the Form U–5 are accorded only a qualified privilege." Pl.'s Br. 16; *see also id.* at 18–25. "Alternatively," Rosenberg argues that this court should certify to the New York Court of Appeals the question "whether statements made in a Form U–5 should be accorded absolute or qualified immunity." *Id.* at 16; *see also id.* at 26–27.

**I. Statements on a Form U–5: A Qualified or Absolute Privilege?**

Contrary to Rosenberg's argument, *Fahnestock* did not directly hold that statements on a Form U–5 are subject to a qualified privilege. *See Fahnestock*, 935 F.2d at 516. *Fahnestock* involved an action by an employer, Fahnestock & Co., to set aside an arbitration award obtained by one of its former employees, Waltman. *Id.* at 514. An arbitration panel had held, among other things, that Fahnestock defamed Waltman when it filed an amended Form U–5 with the NASD. *Id.* Because Waltman was awarded damages based on

his defamation claim, the arbitration panel necessarily rejected Fahnestock's claim of absolute privilege. The district court denied Fahnestock's petition to vacate the award. *Id.* at 515.

On appeal, Fahnestock argued that the arbitrators "manifestly disregarded" New York law in granting an award for defamation based on its filing of the amended Form U–5, because statements on such forms are accorded an absolute privilege. *Id.* at 515–16. In rejecting Fahnestock's argument, this court emphasized that review for "manifest disregard" is "extremely limited." *Id.* at 516. At the time, New York courts had not spoken on whether Form U–5 statements are protected by an absolute or a qualified privilege. We observed that ample record evidence of "Fahnestock's flagrantly spiteful conduct" could have supported the arbitrators' decision declining to extend to Fahnestock the shield provided by a qualified privilege. *Id.* Based on that observation, we held that "the arbitrators acted well within the bounds of their broad authority in making an award of compensatory damages in favor of Waltman." *Id.* (citing *In re Marine Pollution Serv., Inc.*, 857 F.2d 91, 94 (2d Cir.1988) (stating that any "colorable justification" will support an arbitral award)).

Plainly, our holding in *Fahnestock* does not definitively stand for the proposition that, under New York law, Form U–5 statements are entitled to a qualified privilege. Rather, we held that the arbitrators' decision to apply a qualified privilege was not in manifest disregard of New York law. *Id.* at 515–16.

Because the New York Court of Appeals has yet to resolve the issue before us, we turn to the decisions of the Appellate Division of the New York Supreme Court. *See Statharos v. N.Y. City Taxi & Limo. Comm'n*, 198 F.3d 317, 321 (2d Cir.1999) ("While we are not strictly bound by the

decision[s] of the Appellate Division, it is nevertheless a well-established principle that the ruling of 'an intermediate appellate state court is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" (ellipsis omitted) (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940))). Shortly after we issued our decision in *Fahnestock*, the Appellate Division of the New York Supreme Court, First Department, issued an opinion in *Herzfeld & Stern, Inc. v. Beck*, 175 A.D.2d 689, 572 N.Y.S.2d 683 (1st Dep't 1991). *Herzfeld* squarely presented the question whether Form U–5 statements are entitled to a qualified or absolute privilege. The First Department decided that the latter standard applies. *Id.* at 685. The *Herzfeld* court reasoned that Form U–5 statements related to a "quasi-judicial proceeding," and the filing of such forms was effectively mandated as a matter of law. *Id.* As a result, the court accorded any statements made on a Form U–5 an absolute privilege. *Id.*

More recently, however, two members of the First Department questioned the propriety of the holding in *Herzfeld. Cicconi v. McGinn, Smith & Co.*, 27 A.D.3d 59, 808 N.Y.S.2d 604, 608–09 (1st Dep't 2005) (Ellerin, J., dissenting). In a dissenting opinion in which Justice Williams joined, Justice Ellerin explained that, even though she had joined the majority that originally decided *Herzfeld*, she was now of the view that *Herzfeld* was incorrectly decided. *Id.* at 608. She argued that "the cloak of absolute privilege has generated substantial abuses by way of distorted and false filings for tactical, competitive business reasons, without any realistic recourse available to those injured." *Id.* "A qualified privilege," she concluded, "would serve the industry purpose of protecting investors and the public from problem representatives, while protecting the interests of the employee." *Id.*

Of course, *Cicconi* is also relevant because a three-justice majority of the First Department expressly reaffirmed its decision in *Herzfeld. Cicconi*, 808 N.Y.S.2d at 608. However, while none of the other departments has spoken directly on the matter, the Fourth Department has cast some doubt on the First Department's position. The Fourth Department, in reviewing an arbitration award, stated that New York law is far from clear that statements made on a Form U–5 are accorded "absolute immunity in every circumstance." *Spasiano, 1717 Capital Mgmt. Co.*, 1 A.D.3d 902, 767 N.Y.S.2d 736, 736 (4th Dep't 2003).[2]

In our opinion, the holdings of the lower New York courts do not compel one conclusion over another—particularly where, as here, there are compelling arguments to be made on both sides of the debate. *Compare Cicconi*, 808 N.Y.S.2d at 607–08 (concluding that society's interest in clear descriptions of brokers' conduct outweighs the interest in providing a limited remedy in defamation for those who are libeled by employers with improper motives), *with id.* at 608 (Ellerin, J., dissenting) (arguing

---

**2.** The Second Department has held, in an arguably analogous context, that statements made by a former employer "during the course of a quasi-judicial *administrative investigation* conducted by" the NASD were absolutely privileged. *Dunn v. Ladenburg Thalmann & Co.*, 259 A.D.2d 544, 686 N.Y.S.2d 471, 472 (2d Dep't 1999) (emphasis added)

(citing *Herzfeld*, 572 N.Y.S.2d 683, 175 A.D.2d at 691); cf. *Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704, 708 (7th Cir.1994) (Posner, C.J.) (distinguishing between statements made during the course of an NASD investigation and statements made on a Form U5). The Third Department has not spoken on the matter.

that "the cloak of absolute privilege has generated substantial abuses by way of distorted and false filings for tactical, competitive business reasons"), *Dawson v. N.Y. Life Ins. Co.*, 135 F.3d 1158, 1164 (7th Cir.1998) (stating that "wiser policy leads to the conclusion that a qualified privilege adequately protects the interests of all parties concerned"), *Acciardo v. Millennium Secs. Corp.*, 83 F.Supp.2d 413, 419 (S.D.N.Y.2000) (stating that "derogatory or false Form U–5 statements can effectively 'blackball' a broker from the industry" (citing Michael Siconolfi, *"Blackballing" of Brokers is Growing on Wall Street*, Wall St. J., Feb. 27, 1998, at C1)), and Anne H. Wright, *Form U–5 Defamation*, 52 Wash. & Lee L.Rev. 1299, 1331 (1995) (concluding that Form U–5 statements should be accorded only a qualified privilege). Given the unsettled nature of this question, and its obvious import, we explore whether certification is warranted.

## II. Certification to the New York Court of Appeals

New York law and Second Circuit Local Rule § 0.27 permit us to certify to the New York Court of Appeals "determinative questions of New York law [that] are involved in a cause pending before [us] for which no controlling precedent of the Court of Appeals exists." N.Y. Comp. Codes R. & Regs. tit. 22, § 500.27(a); *see also State Farm Mut. Auto. Ins. Co. v. Mallela*, 372 F.3d 500, 505 (2d Cir.2004).

We have deemed certification appropriate where state law is not clear and state courts have had little opportunity to interpret it, *see, e.g., Unigard Sec. Ins. Co. v. North River Ins. Co.*, 949 F.2d 630, 631–32 (2d Cir.1991), where an unsettled question of state law raises important issues of public policy, *see, e.g., Shaffer v. Schenectady City Sch. Dist.*, 245 F.3d 41, 47 (2d Cir.2001), where the question is likely to recur, *see,*

*e.g., Mark A. Varrichio & Assocs. v. Chicago Ins. Co.*, 312 F.3d 544, 550 (2d Cir.2002), and where the result "may significantly impact a highly regulated industry," *Golden v. Winjohn Taxi Corp.*, 311 F.3d 513, 515 (2d Cir.2002), *certification withdrawn per settlement of the parties*, 323 F.3d 185 (2d Cir. 2003).

*State Farm*, 372 F.3d at 505.

■ In deciding whether to certify a question, we consider, among other things: "(1) the absence of authoritative state court interpretations of the state statute [or legal issue]; (2) the importance of the issue to the state, and whether the question implicates issues of state public policy; and (3) the capacity of certification to resolve the litigation." *Morris v. Schroder Capital Mgmt. Int'l*, 445 F.3d 525, 531 (2d Cir.2006) (citations and internal quotation marks omitted). We address each consideration in turn.

### A. Is this an unsettled question of New York law?

■ The New York Court of Appeals has not addressed whether Form U–5 statements are accorded an absolute or qualified privilege. As we have indicated above, New York's intermediate appellate courts have adopted neither a uniform rule that we are compelled to follow nor a standard that is necessarily predictive of how the New York Court of Appeals would rule. In fact, the majority of the departments have not squarely addressed the question. We therefore cannot agree with the district court's conclusion that "the overwhelming authority in the New York courts" supports an absolute privilege for Form U–5 statements. We believe that the question presented in this case is sufficiently unsettled to warrant certification. *See also Acciardo*, 83 F.Supp.2d at 420 ("Given the general controversy and

weight of conflicting case law, there is ample evidence to suggest that New York's highest court may some day reach a different conclusion [than the First Department] on Form U–5 immunity.").

### B. Is this an important issue of state law?

The issue presented by this appeal is not simply unsettled; it is also important. Resolution of the question presented will determine whether the interests of those involved with New York's financial markets are best served by an absolute privilege, which would provide for candid disclosure of brokers' conduct but leave former employees without a remedy in tort for even the most egregious and abusive statements made by former employers, or a qualified privilege, which would provide for a limited remedy in tort but potentially subject employers to extensive litigation, both meritorious and frivolous. We believe that the resolution of this state law question is a matter best left to the New York Court of Appeals to resolve in the first instance. The State's highest court is the proper tribunal to weigh these important, and potentially competing, interests and to select the policy that most appropriately advances the interests of the people of New York.

### C. Is the resolution of the question determinative?

The resolution of this unsettled and important issue of state law will determine the outcome of this appeal, and it will contribute significantly to the completion of this litigation. *See Green v. Montgomery,* 219 F.3d 52, 60 (2d Cir.2000) (stating that we consider, among other things, "the capacity of certification to resolve the litigation"). If Form U–5 statements are accorded an absolute privilege, then we would affirm the judgment of the district court. If, however, Form U–5 statements are accorded only a qualified privilege, then we would vacate the judgment in part and remand the case to the district court to determine in the first instance whether the defendants abrogated the shield provided by a qualified privilege.

### CONCLUSION

We conclude that an unsettled, important, and determinative issue of New York law is central to this case, and thus certification to the New York Court of Appeals is appropriate. Pursuant to Second Circuit Local Rule § 0.27 and New York Compilation of Codes, Rules and Regulations, title 22, section 500.27(a), we certify the following question to the New York Court of Appeals:

> Are statements made by an employer on an NASD employee termination notice ("Form U–5") subject to an absolute or a qualified privilege in a suit for defamation?

The New York Court of Appeals may, of course, reformulate or expand upon this question as it deems appropriate.

It is hereby ORDERED that the Clerk of the Court transmit to the Clerk of the New York Court of Appeals a certificate in the form attached, together with a copy of this opinion and a complete set of the briefs, appendices, and record filed by the parties in this court. This panel will retain jurisdiction to decide the case once we have had the benefit of the views of the New York Court of Appeals or once that court declines to accept certification. Finally, we order the parties to bear equally any fees and costs that may be requested by the New York Court of Appeals.

### CERTIFICATE

The following question is hereby certified to the New York Court of Appeals

pursuant to Second Circuit Local Rule § 0.27 and New York Compilation of Codes, Rules and Regulations, title 22, section 500.27(a), as ordered by the United States Court of Appeals for the Second Circuit:

Are statements made by an employer on an NASD employee termination notice ("Form U–5") subject to an absolute or a qualified privilege in a suit for defamation?