*320 OPINION OF THE COURT
Judith J. Gische, J.
Petitioner Barclays Capital Inc. has brought this petition seeking an order vacating the award by an arbitration panel of the National Association of Securities Dealers (NASD), only to the extent it awarded respondent Elizabeth Bing Shen, its former employee, punitive damages. Shen has answered the petition and now cross-moves for an order confirming the award in its entirety.
The petition and cross motion before the court focus on whether the NASD arbitration panel’s award of punitive damages to Shen was rendered in “manifest disregard of the law,” as the law was recently established in the Court of Appeals case of Rosenberg v MetLife, Inc. (8 NY3d 359 [2007] [Rosenberg II]). Barclays contends that the arbitrators knew about and then proceeded to ignore the holding in Rosenberg II, which precludes any monetary damages, not alone punitive damages, for defamatory statements made about a terminated employee in a U-5 filing. Shen argues that the award of punitive damages is legally consistent with Rosenberg II and not made in manifest disregard of the law.
Applicable Law
The NASD is a self-regulatory organization and quasi-governmental entity that has been delegated the authority to enforce the requirements of the Securities Exchange Act and it is the primary regulator of the broker-dealer industry. (Rosenberg v MetLife, Inc., 8 NY3d 359, 366 [2007].) Arbitration of disputes concerning employment in the securities industry is governed by the Federal Arbitration Act (FAA). (9 USC §§ 1-11; Matter of Salvano v Merrill Lynch, Pierce, Fenner & Smith, 85 NY2d 173 [1995].) The decisions and awards of the panel must be examined applying federal law, and not CPLR article 75. (Wien & Malkin LLP v Helmsley-Spear, Inc., 6 NY3d 471, 480 [2006].)
The FAA provides that an arbitration award may be vacated if: (1) the award was procured by corruption, fraud or undue means; (2) the arbitrators exhibited “evident partiality” or “corruption”; (3) the arbitrators were guilty of misconduct; or (4) the arbitrators exceeded their power. (9 USC § 10 [a] [1], [2], [3], [4].) An arbitration award may also be vacated if it is rendered in “manifest disregard of the law.” (Wien & Malkin LLP v Helmsley-Spear, Inc., 6 NY3d 471, 480 [2006]; Halligan v *321 Piper Jaffray, Inc., 148 F3d 197, 201-203 [2d Cir 1998], cert denied 526 US 1034 [1999].)
“Manifest disregard of law,” however, is a severely limited doctrine, applied only in extremely rare situations and highly deferential to arbitration awards. (Porzig v Dresdner, Kleinwort, Benson, N. Am. LLC, 497 F3d 133 [2d Cir 2007].) The petitioner has a heavy burden and the arbitral award may be vacated only where a petitioner can demonstrate both that (1) the arbitrators knew of a governing legal principle, yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case. Wallace v Buttar, 378 F3d 182 [2d Cir 2004].) It is best described as a “doctrine of last resort” where some egregious impropriety on the part of the arbitrators is apparent, but where none of the provisions of the FAA apply. (Duferco Intl. Steel Trading v T. Klaveness Shipping A/S, 333 F3d 383, 389 [2d Cir 2003].) The doctrine is not intended to supercede the more widely recognized rule that mere errors of law are insufficient to set aside an arbitration award. (Bear, Stearns & Co., Inc. v 1109580 Ontario, Inc., 409 F3d 87, 92 [2d Cir 2005]; Matter of New York State Correctional Officers & Police Benevolent Assn. v State of New York, 94 NY2d 321 [1999].) The court cannot simply disregard or vacate the panel’s award because it would have decided the matter differently, or it believes the panel arrived at the wrong conclusion. Moreover, the arbitrators’ decision must be upheld even if there is only a barely colorable justification for the outcome the arbitrators reached. (Landy Michaels Realty Corp. v Local 32B-32J, Serv. Empls. Intl. Union, AFL-CIO, 954 F2d 794, 797 [2d Cir 1992].)
Arguments
Respondent Shen was terminated from employment by Bar-clays on January 26, 2006. Prior to her termination, Shen received a “C” grade for her year 2005 performance. She was graded at her year-end performance review on January 18, 2006. At that review, Shen was rebuked for not having checked certain factual data in materials sent to investors. After her review Shen provided an e-mail to her superiors purportedly from an outside accounting firm that showed she had checked the materials for accuracy before sending them out. The e-mail proof Shen provided, however, was (admittedly) a composite of two e-mails from the accountant that she cut and pasted into a single document. Barclays conducted an investigation and shortly thereafter Shen was terminated. Following her termina *322 tion, Barclays filed the required U-5 termination notice with the NASD in February 2006. In that U-5, Barclays stated that Shen had been terminated for “gross misconduct — non securities related,” based upon the composite e-mail.
Shen then filed a claim with the NASD in August alleging that Barclays had engaged in the following illegal acts:
“A. Making a false, malicious, defamatory (i.e. ‘libelous’) U-5 filing with the [NASD] . . .
“B. Attempting overtly and nefariously, in premeditated fashion, to impugn [Shen’s] reputation and destroy her burgeoning career in the securities industry; and
“C. Being unjustly enriched as a result of its failure to pay [Shen] a bonus for Calendar year 2005 (payable in early 2006).”
In her statement of claim Shen sought the following relief:
“A. An expungement of the false language contained in the U-5;
“B. Libel Damages of $5,000,000.00, representing damage to the Claimant’s Reputation and damage to the claimant’s career emanating from Respondent’s false, malicious, defamatory filing;
“C. Quantum Meruit Damages of approximately $163,000.00, emanating from the Respondent’s unjust enrichment as a result of its failure to pay the Claimant a bonus for Calendar Year 2005, notwitstanding the fact that the Claimant worked at Barclays for the entire year in 2005 — the exact amount of said unjust enrichment to be quantified at a hearing of this matter;
“D. Punitive damages of $5,000,000.00, resulting from the Respondent’s malicious and egregious U-5 filing and attempt to destroy Claimant’s career in the securities industry; and
“E. Such other and further relief as this Panel deems just and proper under the circumstances including, but not limited to, Attorneys’ fees, statutory interest, and the reimbursement of all filing fees, disbursements, and expenditures that the Claimant has incurred and will continue to incur, in connection with the prosecution of this matter.”
In June 2007, following the Court of Appeals decision in Rosenberg II, Barclays brought motions to dismiss before the panel, presenting arguments that are identical to those now *323 before this court. The motions were made both orally and in writing. They were made pre- and post-hearing. Copies of the relevant Court of Appeals case were put before the panel. Bar-clays made arguments virtually identical to those it now makes in connection with this petition, including that the statements on the U-5 notice were absolutely privileged. The record on this petition does not show the nature of the opposition posed by Shen to those motions. The panel ordered that the testimonial hearing proceed. The hearing took place over the course of three days.
Following the hearing, the panel made the following awards:
“1. Respondent is liable for and shall pay to [Shen] compensatory damages in the amount of $90,000.
“2. Respondent is liable for and shall pay to [Shen] punitive damages in the amount of $95,000.
“3. The Panel recommends the expungement of the accompanying explanation under the Reason for Termination entered on the Form U-5 and Internal Review Disclosure filed by Barclays Capital Inc., from [Shen’s] registration records maintained by the NASD Central Depository (‘CRD’). The panel further recommends that [Shen’s] Form U-5 and Internal Review Disclosure be corrected to reflect that [Shen’s] accompanying explanation for her Reason for Termination From [Barclays] was ‘due to a regrettable act of misjudgment — non securities related.’ The expungement is based upon the defamatory nature of the information contained in [Shen’s] CRD record.”
In support of its petition, Barclays contends the panel misapplied the law, refused to apply it or ignored it altogether, and therefore the award of punitive damages it made was in manifest disregard of the Court of Appeals decision in Rosenberg II and it must be vacated. (Greenberg v Bear, Stearns & Co., 220 F3d 22, 28 [2d Cir 2000], cert denied 531 US 1075 [2001].) Petitioner contends that application of the legal principles set forth in Rosenberg II is a complete bar to Shen from recovering punitive damages on any statement in the U-5 because the contents of that form are absolutely privileged. Bar-clays contends that the award of punitive damages violates public policy because it has a chilling effect on the free and open disclosure of information relevant to potential securities violations. (Matter of Dunn v Ladenburg Thalmann & Co., 259 AD2d 544 [2d Dept 1999], lv denied 93 NY2d 810 [1999].)
*324 In opposition to Barclays’ motion and in support of her cross motion to confirm the NASD’s award in its entirety, Shen argues that the NASD did not, in fact, award her punitive damages on her defamation claim, but ordered the expungement of her records, which is wholly consistent with Rosenberg II. Further, Shen contends that the panel did not give a reason why it awarded Shen punitive damages, nor was it under any obligation to do so. (Hoeft v MVL Group, Inc., 343 F3d 57, 64 [2d Cir 2003].) Shen argues further that the arbitration panel has the broad authority to make awards, including punitive damages awards. Finally, Shen argues that in the absence of any punitive damages award by the panel specifically for her defamation claim, they could have been awarded for any number of reasons, and, therefore, this court must defer to the panel.
In response to these arguments, Barclays contends that the award had to be for defamation because that was the only claim Shen sought such relief for. Assuming the award was made for some other reason, Barclays argues that the panel exceeded its authority because Shen’s attorney only identified two claims his client sought redress for: defamation and the failure to pay Shen a bonus for the year 2005. Thus Barclays contends the punitive damages could not possibly have been on the contract/ quasi-contract claim for the bonus because punitive damages are unavailable for contract based claims. (Rocanova v Equitable Life Assur. Socy. of U.S., 83 NY2d 603 [1994]; Carvel Corp. v Noonan, 350 F3d 6 [2d Cir 2003].)
Discussion
The bedrock of Barclays’ claim is that (1) the Court of Appeals decision in Rosenberg II bars Shen from receiving any monetary recovery for claims related to U-5 filings Barclays made about her with the Securities and Exchange Commission because they are absolutely privileged, and (2) Shen’s only redress is expungement. Barclays argues that the panel had been made aware of the applicable law in oral and written motions and that they simply chose to ignore controlling legal precedent.
A proper analysis of these arguments begins with an analysis of the Court of Appeals decision in Rosenberg II.* The case of Rosenberg v MetLife started out in the Federal District Court of *325 the Southern District of New York. After being fired, Chaskie Rosenberg, a financial services representative with an affiliate of MetLife, commenced a plenary action alleging, among other things, that he had been defamed because of libelous statements in the U-5 notice of termination that MetLife filed with the NASD. In connection with motions before it, the District Court dismissed Rosenberg’s defamation action, but allowed other claims to proceed to trial before a jury, which ultimately rendered a defense verdict. Rosenberg appealed. The United States Court of Appeals certified the following question to the New York Court of Appeals: “Are statements made by an employer on an NASD employee termination notice (‘Form U-5’) subject to an absolute or a qualified privilege in a suit for defamation?” (453 F3d 122, 129 [2006].) The New York Court of Appeals provided the following certified answer:
“The Form U-5’s compulsory nature and its role in the NASD’s quasi-judicial process, together with the protection of public interests, lead us to conclude that statements made by an employer on the form should be subject to an absolute privilege. Analogously, close to 40 years ago in Wiener [v Weintraub, 22 NY2d 330 (1968)] we determined that complaints involving attorneys should be accorded an absolute privilege because of ‘the necessity of maintaining the high standards of our bar’ (Weiner, 22 NY2d at 332). The regulation of registered brokers in the securities industry is of no less importance. We further note that registered employees who are maliciously defamed on a Form U-5 are not wholly without remedy as they may commence an arbitration proceeding or court action to expunge any alleged defamatory language.
“Accordingly, the certified question should be answered as follows: Statements made by an employer on a NASD termination notice are subject to an absolute privilege in a suit for defamation.” (Rosenberg II, 8 NY3d at 368.)
Following this answer by the New York Court of Appeals, the U.S. Court of Appeals affirmed the District Court’s dismissal of the defamation claim:
“It is now clear that the statements on which Rosen *326 berg bases his libel claim are absolutely privileged under New York law. See Rosenberg II, 8 N.Y.3d at 368. Absolute privilege shields the speaker or writer from liability for an otherwise defamatory statement, regardless of the speaker or writer’s motive in making the statement. Park Knoll Assocs. v. Schmidt, 59 N.Y.2d 205 (1983). Rosenberg advances no argument that the statements might escape the privilege. Because a libel action on an absolutely privileged statement is barred as a matter of New York law, see, e.g., Cicconi v. McGinn, Smith & Co., 27 A.D.3d 59 (2005), the district court properly granted summary judgment to MetLife.” (Rosenberg v MetLife, Inc., 493 F3d at 291-292 [citations omitted].)
Rosenberg II is explicit and directly applicable to this case. It unequivocally rules out monetary damages, of any kind, for a claimed defamation in a required U-5 filing. The Court of Appeals decision makes it clear that the holding was based upon compelling and strong public policy reasons. (Greenberg v Bear, Sterns & Co., 220 F3d 22, 27 [2d Cir 2000]; Matter of New York State Correctional Officers & Police Benevolent Assn. v State of New York, supra.)
It is beyond dispute that the panel was familiar with the Rosenberg II decision. The decision and its impact on the pending arbitration had been vigorously argued before the panel in both oral and written motions by petitioner. The record does not reveal the substance of the opposition by Shen. While there is some indication about the parties having orally argued the motion to the arbitrators in a phone conversation, there is no other indication that Shen actually opposed the application.
Thus, the court holds that this is one of those rare cases where the panel, aware of the applicable law and attendant public policy considerations, chose to ignore it. The two prongs of the manifest disregard doctrine are satisfied in this case. (Halligan v Piper Jaffray, Inc., supra.)
Shen argues that because the NASD did not expressly state that the punitive damages were for her libel claim, the court cannot and should not assume that it was for her libel claim. Arbitrators are not required to provide an explanation for their arbitration award. (Hoeft v MVL Group, Inc., 343 F3d 57, 64 [2d Cir 2003]; Halligan v Piper Jaffray, Inc., 148 F3d 197, 204 [2d Cir 1998].) Moreover, the failure to state the reasons for an award cannot form the basis for vacatur if any ground for the *327 arbitrators’ decision can be gleaned from the factual record. (Sobel v Hertz, Warner & Co., 469 F2d 1211, 1216 [2d Cir 1972].)
The court, however, has carefully considered this case and it cannot discern any colorable basis to otherwise support punitive damages. The conclusion is inescapable that the punitive damages must have been awarded for the defamation claim, because that is the only basis on which Shen sought such damages. Shen made this point clearly in her own statement of claim. The arbitrators were bound to, and this court must, conclude they did rule only on matters presented to them by the parties. (Fahnestock & Co., Inc. v Waltman, 935 F2d 512 [2d Cir 1991].) Even were the court to consider whether there is another basis for the award, none can be found, Shen’s conjecture notwithstanding.
Conclusion
In accordance herewith, it is hereby ordered that the petition to vacate that part of the arbitration award which awarded respondent punitive damages in the amount of $95,000 is hereby granted and the award of same is vacated, and it is hereby ordered that except as to punitive damages the cross motion to confirm the arbitration award is granted.
Any relief requested that has not been expressly addressed has nonetheless been considered and is hereby denied.

 The complete citation for the Rosenberg v MetLife case is as follows: Rosenberg v MetLife, Inc. (2005 WL 356821, 2005 US Dist LEXIS 2135 [SD NY 2005]); Rosenberg v MetLife (453 F3d 122 [2d Cir 2006, certified question], 8 NY3d 359 [2007, certified question answered]); Rosenberg v MetLife (2005 WL 356821, 2005 US Dist LEXIS 2135 [SD NY 2005], affd 493 F3d 290 *325 [2007]). The U.S. Court of Appeals identified the New York Court of Appeals decision on the certified question as Rosenberg II.