Frank ORENSTEIN, Plaintiff,

v.

Reid FIGEL and Kellogg, Huber, Hansen, Todd, Evans and Figel, P.L.L.C., Defendants.

No. 09 Civ. 7060(SHS).

United States District Court, S.D. New York.

Dec. 30, 2009.

Matthew Ethan Hearle, Goldberg Weprin Finkel Goldstein, LLP, New York, NY, for Plaintiff.

Gregory L. Diskant, Sarah E. Zgliniec, Patterson, Belknap, Webb & Tyler LLP, New York, NY, for Defendants.

## OPINION & ORDER

SIDNEY H. STEIN, District Judge.

Plaintiff Frank Orenstein brings this action for libel per se against Reid Figel, an attorney, and his law firm, Kellogg, Huber, Hansen, Todd, Evans, and Figel, P.L.L.C. Orenstein alleges that Figel and his firm libeled Orenstein in a letter they sent to Orenstein's business associate, Richard A. Warnick. Defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted, contending that the complaint fails to allege the malice required for Orenstein to succeed.

## I. Background

The following facts are taken from the complaint and the letter dated March 20, 2009 from Reid M. Figel to Richard A. Wamick, which is attached to the complaint, and are presumed to be true.

Orenstein has worked in the international hospitality industry for roughly thirty five years. (Compl. ¶ 4.) In January 2007, he entered into an agreement with nonparty Lancaster Group Pte. Ltd. to develop international luxury hotel and residential projects, for which—Orenstein alleg-

es—Lancaster agreed to provide capital. (*Id.* ¶¶ 8–9.) Orenstein and Lancaster began work on several projects that ultimately failed, allegedly because Lancaster did not provide the agreed-upon capital. During this time, Lancaster formed Alatau Hospitality Limited as a conduit through which to fund the projects, with Orenstein as its Chief Executive Officer. (*Id.* ¶¶ 12, 14.)

On March 20, 2009, Figel wrote a letter on Kellogg Huber letterhead on behalf of Lancaster and Alatau to non-party Richard Warnick regarding invoices that Warnick had submitted to Alatau for work that he allegedly had performed at Orenstein's behest. (*Id.* ¶ 18; *see also* Letter from Reid M. Figel to Richard A. Warnick March 20, 2009 ("Figel letter"), Ex. A to Compl.) Figel wrote in that letter that Lancaster and Alatau had received Warnick's invoices but they were unaware of what work, if any, Warnick had performed. He went on to write that the invoices would not be paid at that time and that his clients—Lancaster and Alatau—needed more information before paying them. He added that "Mr. Orenstein's association with the Lancaster Entities has been terminated upon the discovery of his apparent embezzlement and misappropriation of millions of dollars.... The Lancaster entities are currently in the process of investigating the extent of Mr. Orenstein's fraud and his *ultra vires* activities." (Compl. ¶ 21; Figel letter at 1.)

Orenstein asserts that the quoted statements in the letter are "false and libelous," "defamed Plaintiff both personally and professionally," and "damaged [Plaintiff] personally and professionally." (Compl. ¶¶ 22–23, 25.) Orenstein further alleges that Figel, on behalf of Kellogg Huber, acted "knowingly," "recklessly," and "maliciously" with the "effect and/or ... design [of] negatively impact[ing] a third parties' perception of Plaintiff's ability to conduct business in a professional and legal manner." (*Id.* at ¶¶ 27–31.) He filed the complaint in this action in New York state court on July 15, 2009 and defendants removed it to this Court on August 10, 2009 based on the diversity of citizenship between plaintiff and defendants.

Defendants have moved to dismiss the complaint, arguing that the statements at issue in the March 20, 2009 letter are entitled to both absolute and qualified privilege, Orenstein has not stated a claim on which relief can be granted, and Orenstein has not alleged personal jurisdiction over the defendants.[1] Because defendants are correct that the contested statements are subject to a qualified privilege and because Orenstein has failed to allege the requisite malice to overcome such a privilege, defendants' motion to dismiss is

---

1. In their reply brief, defendants waive their defense of lack of personal jurisdiction and affirmatively consent to this Court's jurisdiction in the interest of resolving Orenstein's claims on the merits and with finality. (*See* Defs.' Reply Mem. at 8, 10.) Because "the personal jurisdiction requirement is a waivable right," a party may consent to the jurisdiction of a particular court. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *see also* Fed. R.Civ.P. 12(b)(2), (h)(1). Similarly, defendants have waived objection to venue in this Court by failing to raise that defense. *See* Fed.R.Civ.P. 12(b)(3), (h)(1)(b). While the Court notes that this action has essentially no connection to this jurisdiction—defendants are located in Washington, D.C. and the letter in question was mailed from Washington, D.C. to Arizona (Compl. ¶¶ 1–3)—it also recognizes that "[a] district court may not dismiss a case sua sponte for improper venue absent extraordinary circumstances," *Gomez v. USAA Federal Sav. Bank,* 171 F.3d 794, 796 (2d Cir.1999). Accordingly, the Court will proceed to the merits, despite the lack of personal jurisdiction over defendants or proper venue, in light of defendants' waiver of these arguments.

granted and the complaint is dismissed with prejudice.

## II. Standard of review

For purposes of a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a court assumes the truth of all facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff. *See Global Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150, 154 (2d Cir.2006). However, this assumption "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). For a claim to be plausible, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. Thus, if a plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Id.*

## III. Analysis

 To succeed on a claim for libel, or defamation based on written statements, pursuant to New York law,[2] a plaintiff must establish the "elements [of] a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and, it must either cause special harm or constitute defamation per se." *Dillon v. City of New York,* 704 N.Y.S.2d 1, 5, 261 A.D.2d 34 (1st Dept. 1999); *see also Rosenberg v. Metlife, Inc.,* 453 F.3d 122, 123 n. 1 (2d Cir.2006) ("Under New York law, libel consists of five elements: (1) a written defamatory statement of fact concerning the plaintiff; (2) publication to a third party; (3) fault (either negligence or actual malice depending on the status of the libeled party); (4) falsity of the defamatory statement; and (5) special damages or per se actionability (defamatory on its face)." (quotations and citation omitted)). Because the allegedly libelous statements relate to Orenstein's professional stature and reputation, any finding of libel would constitute libel per se, for which injury to the plaintiff is assumed. *See Meloff v. N.Y. Life Ins. Co.,* 240 F.3d 138, 145 (2d Cir.2001); *see also DiBella v. Hopkins,* 403 F.3d 102, 110 (2d Cir.2005).

### A. A qualified privilege protects the statements at issue.

 Defendants contend that Figel's statements to Warnick are protected by a privilege. Public policy "mandates that certain communications, although defamatory, cannot serve as the basis for the imposition of liability in a defamation action." *Rosenberg v. Metlife, Inc.,* 8 N.Y.3d 359, 365, 834 N.Y.S.2d 494, 866 N.E.2d 439 (2007) (quoting *Toker v. Pollak,* 44 N.Y.2d 211, 218, 405 N.Y.S.2d 1, 376 N.E.2d 163 (1978)). An absolute privilege exists "[w]hen compelling public policy requires that the speaker be immune from suit,"

---

**2.** While defendants fleetingly raise the possibility that the substantive law of Arizona or the District of Columbia might apply, all parties rely on New York law in their briefs, which is sufficient to resolve any choice of law question in this action. *See W.M. Passalacqua Builders, Inc. v. Resnick Developers, Inc.,* 933 F.2d 131, 137 (2d Cir.1991) (applying New York law because both parties relied on that law to support their arguments).

*Liberman v. Gelstein,* 80 N.Y.2d 429, 437, 590 N.Y.S.2d 857, 605 N.E.2d 344 (1992), such as communication made in judicial proceedings, *see Martirano v. Frost,* 25 N.Y.2d 505, 307 N.Y.S.2d 425, 255 N.E.2d 693 (1969), or quasi judicial proceedings such as complaints made to a bar grievance committee, *see Wiener v. Weintraub,* 22 N.Y.2d 330, 332, 292 N.Y.S.2d 667, 239 N.E.2d 540 (1968). The statements at issue here were not made in the context of a judicial or quasi judicial proceeding: the letter was written by an attorney solely in the context of a private dispute over an invoice for services rendered by one business to another.

 Even though the statements are not entitled to an absolute privilege, "New York common law affords qualified protection to defamatory communications made by one person to another upon a subject in which both have an interest." *Meloff,* 240 F.3d at 145 (quotation and citation omitted); *see also Konikoff v. Prudential Ins. Co. of Am.,* 234 F.3d 92, 98 (2d Cir.2000) (noting "a similar, albeit less developed, privilege covering a speaker's communications designed to protect the speaker's own legitimate interests"). This qualified privilege applies when " 'the relation of the parties [is] such as to afford reasonable ground for supposing an innocent motive for giving the information, and to deprive the act of an appearance of officious intermeddling with the affairs of others.' " *Silverman v. Clark,* 822 N.Y.S.2d 9, 17, 35 A.D.3d 1 (1st Dept.2006) (quoting *Lewis v. Chapman,* 16 N.Y. 369, 375 (1857)); *see also Anas v. Brown,* 702 N.Y.S.2d 732, 733, 269 A.D.2d 761 (4th Dept.2000) (Qualified privilege extends to " ' communication made bona fide upon any subject matter in which the party communicating has an interest, or in reference to which he has a duty ... if made to a person having a corresponding interest or duty, although it

contained criminating matter which, without this privilege, would be slanderous and actionable; and this though the duty be not a legal one, but only a moral or social duty of imperfect obligation.' " (quoting *Byam v. Collins,* 111 N.Y. 143, 150, 19 N.E. 75 (1888))). Of particular relevance, New York courts have found that the qualified privilege protects an attorney's statements made "in furtherance of her representation of her client" to an adversary party, as is the case here. *Simons v. Katz,* 683 N.Y.S.2d 66, 67, 257 A.D.2d 402 (1st Dept.1999); *see also Toker,* 44 N.Y.2d at 221, 405 N.Y.S.2d 1 (Qualified privilege protects allegedly defamatory statements made to a district attorney during a review of qualifications for judicial office.).

Here, Figel made the statements at issue in a letter questioning the validity of expenses submitted to his clients—Lancaster and Alatau—for payment. The statements explaining that Lancaster had terminated its relationship with Orenstein "upon the discovery of his apparent embezzlement and misappropriation of millions of dollars" and that Lancaster was "currently in the process of investigating the extent of Mr. Orenstein's fraud and his *ultra vires* activities" relate directly to the activities for which Warnick submitted his claims, namely "telephone conversations and meetings with Mr. Frank Orenstein." (Compl. ¶ 21; Figel letter at 1.) Figel's clients' doubts regarding the legitimacy of Orenstein's activities directly inform the questions he raises in the letter regarding Warnick's invoices. Accordingly, Figel—and by extension his law firm—made the purportedly defamatory statements "in furtherance of h[is] representation of h[is] client," *Simons v. Katz,* 257 A.D.2d at 403, 683 N.Y.S.2d 66, and "upon a subject in which both [he and Warnick] have an interest," *Meloff,* 240 F.3d at 145. Thus, Figel's statements regarding Orenstein in

his March 20, 2009 letter to Richard Warnick are entitled to a qualified privilege.

### B. Orenstein does not allege malice plausibly to overcome the qualified privilege.

■ "Communications that are protected by a qualified privilege are not actionable unless a plaintiff can demonstrate that the declarant made the statement with malice. Malice in this context has been interpreted to mean spite or a knowing or reckless disregard of a statement's falsity." *Rosenberg*, 8 N.Y.3d at 365, 834 N.Y.S.2d 494. Here, Orenstein alleges that Figel, on behalf of Kellogg Huber, acted "knowingly," "recklessly," and "maliciously" in writing the March 20, 2009 letter. (Compl. ¶¶ 27–30.) The complaint provides neither factual support for these conclusions nor any explanation of why either Figel or his law firm would have an interest in acting maliciously toward Orenstein.

■ To survive a motion to dismiss, a complaint must do more than recite the elements of a cause of action in conclusory statements; it must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. Orenstein's bald allegations that defendants acted with malice—unadulterated by any factual support whatsoever—do not met this burden. Accordingly, plaintiff has not overcome defendants' qualified privilege.

### C. Defendants can succeed on a qualified privilege defense at the motion to dismiss stage.

Orenstein contends that, because qualified privilege is an affirmative defense, he has no obligation to address it in the complaint and defendants may not raise it as part of their pre-answer motion to dismiss. This argument is unavailing, however, in light of the incorporation of a lack of privilege into the elements of a defamation claim. *See Dillon*, 704 N.Y.S.2d at 5 ("The elements are a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and, it must either cause special harm or constitute defamation per se.").

New York courts have articulated the standard for libel and defamation using various terms, not all of which explicitly include malice or the requirement that the statement in question lack privilege. *See Foster v. Churchill*, 87 N.Y.2d 744, 751, 642 N.Y.S.2d 583, 665 N.E.2d 153 (1996) ("[D]efamation ... is defined as the making of a false statement which tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society." (quotation and citation omitted)); *see also Rosenberg*, 453 F.3d at 123 n. 1. Nonetheless, because an element of fault and intent appears in each standard and because Orenstein utterly fails to plead facts that could support his conclusory allegations regarding defendants' purported—and implausible—malice toward him, defendants' motion to dismiss is granted.

### IV. Conclusion

A qualified privilege protects Figel's statements regarding Orenstein in the March 20, 2009 letter because Figel and the letter's recipient, Richard Warnick, shared an interest in resolving questions related to Warnick's collaboration with Orenstein and the validity of the invoice that Warnick had submitted to Figel's client. Orenstein has not overcome this privilege because he does not allege facts that support a plausible inference that Figel or his law firm acted with malice. Accordingly,

defendants' motion to dismiss the complaint is granted.

SO ORDERED.